

SO ORDERED,

Judge Neil P. Olack
United States Bankruptcy Judge
Date Signed: October 17, 2017

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

HERITAGE REAL ESTATE INVESTMENT, INC.,  CASE NO. 14-03603-NPO

DEBTOR.  CHAPTER 7

STEPHEN SMITH, AS TRUSTEE FOR  PLAINTIFF
HERITAGE REAL ESTATE
INVESTMENT, INC.

VS.  ADV. PROC. NO. 16-00040-NPO

DYNASTY GROUP, INC., AN ALABAMA  DEFENDANT
CORPORATION

### MEMORANDUM OPINION AND ORDER ON COMPLAINT TO SET ASIDE CONVEYANCE §§ 544, 549 AND 362, FOR DAMAGES FOR VIOLATION OF AUTOMATIC STAY AND TO CANCEL CONVEYANCE AS CLOUD ON TITLE

This matter came before the Court for trial on September 19, 2017 (the "Trial"), on the

Complaint to Set Aside Conveyance §§ 544, 549 and 362, for Damages for Violation of Automatic

Stay and to Cancel Conveyance as Cloud on Title (Adv. Dkt. 1)[1] filed by Stephen Smith, the

chapter 7 trustee (the "Trustee"), and the Answer (Adv. Dkt. 14) filed by Dynasty Group, Inc.

("Dynasty") in the Adversary.  The Pretrial Order (the "PTO") (Adv. Dkt. 37) was entered on

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. __)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. __)".

September 7, 2017. At Trial, Jim F. Spencer, Jr. represented the Trustee, and Henry L. Penick and Jerald D. Crawford represented Dynasty. During Trial, the Trustee introduced into evidence two (2) exhibits[2] and Dynasty introduced into evidence one (1) exhibit. In his case-in-chief, the Trustee testified on his own behalf. Dynasty presented the testimony of three (3) witnesses: (a) Booker Grantham, the former treasurer of the debtor, Heritage Real Estate Investment, Inc. (the "Debtor");[3] (b) Linda Wilson ("Wilson"), the former secretary and current president of the Debtor;[4] and (c) Fannie Grantham, the president of Dynasty.[5] At issue in the Adversary is (1) whether Dynasty's quitclaim deed (the "Quitclaim Deed") is void as a matter of Mississippi law because it is not signed by the grantor; (2) whether the Trustee, in his capacity as a bona fide purchaser for value without notice under 11 U.S.C. § 544(a)(3),[6] can avoid the Quitclaim Deed; (3) whether the postpetition recording of the Quitclaim Deed constitutes a violation of the automatic stay under § 362; and (4) whether the Trustee can avoid the Quitclaim Deed as a postpetition transfer under § 549. The Court, having considered the pleadings, evidence, and arguments of counsel, finds that the Quitclaim Deed is void under Mississippi law,[7] the Trustee,

---

[2] Hereinafter, exhibits introduced into evidence at Trial by the Trustee are cited as "(Trustee Ex. ___)".

[3] Test. of Booker Grantham at 10:54:07 – 10:54:30. The Trial was not transcribed. References to the argument and testimony presented at Trial are cited by the timestamp of the audio recording.

[4] Test. of Wilson at 11:04:40 – 11:05:08.

[5] Test. of Fannie Grantham at 11:37:20 – 11:37:35.

[6] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code, unless otherwise noted.

[7] At Trial, Dynasty attempted to explain the Quitclaim Deed's shortcomings to persuade the Court that the Quitclaim Deed is valid under Mississippi law. Because reformation of the Quitclaim Deed was not an issue before the Court, the parol evidence rule bars Dynasty's interpretations of the Quitclaim Deed and, therefore, the Court limits its examination of the

as a hypothetical bona fide purchaser, can avoid the Quitclaim Deed, and the postpetition recording of the Quitclaim Deed violated the automatic stay for the reasons set forth below.[8]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O). Notice of the Trial was proper under the circumstances.

## Facts

1.      On October 20, 1995, the Debtor acquired by warranty deed (the "Warranty Deed") approximately eighty (80) acres of real property located in the West 1/2 of the Southwest 1/4 and the East 1/2 of the Southwest 1/4 of Section 36, Township 12 North, Range 18 East, Kemper County, Mississippi (the "Kemper County Property") (Trustee Ex. 2).

2.      The Debtor subsequently recorded the Warranty Deed to the Kemper County Property in Deed Book 268, page 68 in the Office of the Chancery Clerk of Kemper County, Mississippi (Trustee Ex. 1; PTO at 7).

3.      On November 6, 2014, the Debtor filed a petition for relief under chapter 11 of the U.S. Bankruptcy Code (the "Code") (Bankr. Dkt. 1).

4.      As of November 6, 2014, the date the Debtor commenced the Bankruptcy Case, the Debtor held record title to the Kemper County Property by virtue of the Warranty Deed recorded

---

Quitclaim Deed to the four corners of the document. *See Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) ("Under Mississippi law, where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract. Parol evidence will not be received to vary or alter the terms of a written agreement that is intended to express the entire agreement of the parties on the subject matter at hand.") (internal citations omitted).

[8]  Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

in Deed Book 268, page 68 in the Office of the Chancery Clerk of Kemper County, Mississippi (PTO at 7).

5.      On January 21, 2015, the Court converted the Debtor's Bankruptcy Case to chapter 7 (Bankr. Dkt. 75) and appointed the Trustee to administer the Debtor's bankruptcy estate.

6.      On June 1, 2015, after the appointment of the Trustee, Dynasty filed the Quitclaim Deed (Trustee Ex. 2) in the land records of Kemper County, Mississippi, purporting to convey the Kemper County Property from the Debtor to Dynasty. The Quitclaim Deed was recorded in Deed Book 407, page 64 in the Office of the Chancery Clerk of Kemper County, Mississippi (PTO at 7-8).

7.      The Quitclaim Deed is dated April 24, 2008, and Dynasty, the grantee, was the only party to sign the Quitclaim Deed (Trustee Ex. 2).

## Discussion

### A. Is the Quitclaim Deed valid under Mississippi Law?

Under Mississippi law,[9] "[a]ny interest in or claim to land may be conveyed to vest immediately or in the future, by writing signed and delivered; and such writing shall have the effect

---

[9] In the PTO, Dynasty asserted that the conveyance of the Kemper County Property should be "governed by the laws of Alabama, where the contract to sell and deed was executed." (PTO at 8). Dynasty did not present to the Court a "contract to sell," but, at Trial, the Court admitted the Quitclaim Deed into evidence. (Trustee Ex. 2). Upon review of the Quitclaim Deed, it is unclear where it was executed and delivered; the notary public acknowledged only the witnesses' signatures, and the signature block contains only a signature on behalf of Dynasty, the grantee. This inquiry, however, is immaterial because "[t]he general principle of the common law is that the laws of the place where such [immovable] property is situate exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them. The title, therefore, to real property can be acquired, passed, and lost only according to the *lex rei sitoe*." *Frierson v. Williams*, 57 Miss. 451, 462 (Miss. 1879) (quoting JOSEPH STORY, COMMENTARIES ON THE CONFLICT OF LAWS § 424 (Hilliard, Gray & Co. 1834)) (internal quotations omitted). Alabama also follows this well-settled common law principle. *See Griese-Traylor Corp. v. First Nat'l Bank of Birmingham*, 572 F.2d 1039, 1042 (5th Cir. 1978) ("Where land is concerned, however, Alabama appears to apply the 'lex loci rei sitae' rule: all matters

to transfer, according to its terms, the title of the person signing and delivering it. . . ."  MISS. CODE ANN. § 89-1-1.  In other words, for an interest in land to vest in the grantee, the conveyance must be in writing and signed and delivered by the grantor.  The Quitclaim Deed is signed only by Booker Grantham, who appears to have signed on behalf of Dynasty,[10] the grantee.  (Trustee Ex. 2).  The typewritten names of "Barry Walker Its Booker Grantham" and "Ned Davis Its Terry Foy" appear below Booker Grantham's signature.  (Trustee Ex. 2).  The Debtor, the purported grantor, did not sign the Quitclaim Deed.  Indeed, there is no provision in the Quitclaim Deed for the Debtor's signature.  Consequently, the Quitclaim Deed did not properly transfer the Kemper County Property from the Debtor to Dynasty, and the Quitclaim Deed was ineligible to be recorded by the Chancery Clerk of Kemper County, Mississippi on June 1, 2015.  *See Kountouris v. Varvaris*, 476 So. 2d 599, 604 (Miss. 1985) ("[A]ll that is necessary for a deed to be valid and enforceable is that the grantor execute it and deliver it.").

The Court, therefore, finds that the Quitclaim Deed is facially invalid and void as a matter of law.  Although the Court does not need to address the remaining issues raised at Trial, the Court further finds that the Quitclaim Deed, even if valid, may be avoided by the Trustee under § 544(a)(3) for the reasons set forth below.

---

involving title to land (such as descent, alienation and transfer of property) are governed by the law of the state where the real property is located.").  The Court, therefore, applies the law of Mississippi, the location of the Kemper County Property.

[10]  At Trial, Booker Grantham testified that he served as the Debtor's treasurer in 2008 and has never been an officer of Dynasty.  10:54:07 – 10:54:43.

**B. May the Trustee avoid the Quitclaim Deed under § 544(a)(3)?**

    **1. Does Mississippi law require Dynasty to record the Quitclaim Deed for the conveyance of the Kemper County Property to be effective?**

Under Mississippi law, "[a]ny interest in or claim to land may be conveyed to vest immediately or in the future, by writing signed and delivered; and such writing shall have the effect to transfer, according to its terms, the title of the person signing and delivering it. . . ." MISS. CODE ANN. § 89-1-1. As a preliminary matter, Dynasty argued at Trial that a plain reading of § 89-1-1 shows that the "[Quitclaim D]eed was done" when it was "signed and delivered" on April 24, 2008.[11] Because the "deed was done," Dynasty further asserted that the Quitclaim Deed did not need to be recorded to become effective.[12] Since the Quitclaim Deed was signed and delivered prepetition, Dynasty argued that the Debtor does not own the Kemper County Property.[13]

Dynasty's argument, while correct under a limited set of circumstances, is improper for the purposes of this Trial. Indeed, a conveyance becomes effective *as between the grantor and the grantee* when a deed is properly signed and delivered. *See* MISS. CODE ANN. § 89-1-1; *Davis v. Holifield*, 193 So. 2d 723, 726 (Miss. 1967). While wise, recordation is not a prerequisite to the effectiveness of a valid deed *as between the grantor and the grantee*. Instead, "the purpose of recording is to give notice to third parties dealing with the land." *Davis*, 193 So. 2d at 726.

In this Adversary, the Court is concerned with whether the Trustee, as a hypothetical bona fide purchaser under § 544(a)(3), may avoid the Quitclaim Deed. Thus, whether Dynasty recorded its interest in the Kemper County Property, and the timing of such recording, is relevant in

---

    [11] 10:13:47 – 10:14:04.

    [12] 10:14:04 – 10:14:15.

    [13] 10:14-18 – 10:15:00.

determining whether the Trustee, as a hypothetical bona fide purchaser, would have had notice of the Debtor's purported conveyance of the Kemper County Property to Dynasty. With this in mind, the Court now turns to the issue of whether the Trustee may avoid the Quitclaim Deed under § 544(a)(3).

### 2. § 544

Section 544, commonly referred to as the "strong arm clause," grants the trustee "strong arm powers to avoid certain prepetition property transfers." *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 295 (5th Cir. 1997). The purpose of the strong arm clause "is to cut off secret and undisclosed claims against the debtor's property as of the beginning of the bankruptcy case." *Consol. Partners Inv. Co. v. Lake*, 152 B.R. 485, 490 (Bankr. N.D. Ohio 1993). In other words, § 544(a)(3) enables the trustee to avoid the "transfer of real property that is not perfected and enforceable against a bona fide purchaser at the time the bankruptcy petition is filed." *In re Hamilton*, 125 F.3d at 298. Section 544(a)(3) states, in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
>     . . . .
>
>     (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

11 U.S.C. § 544(a)(3). While the Code creates the hypothetical bona fide purchaser, state law determines whether the individual would qualify as a bona fide purchaser of real property. *See Butner v. United States*, 440 U.S. 48, 54 (1979); *In re Hamilton*, 125 F.3d at 298.

Mississippi is a *race-notice* state for recordation purposes. *See Cmty. Tr. Bank of Miss. v. First Nat'l Bank of Clarksdale*, 150 So. 3d 683, 687 (Miss. 2014). Under Mississippi law, "all deeds of trust and mortgages whatsoever, shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they be acknowledged or proved and lodged with the clerk of the chancery court of the proper county." MISS. CODE ANN. § 89-5-3. Additionally, the "[f]ailure to file such instrument with the clerk for record shall prevent any claim of priority by the holder of such instrument over any similar recorded instrument affecting the same property." *Id.* The Supreme Court of Mississippi has defined a bona fide purchaser as "one who has in good faith paid a valuable consideration without notice of the adverse rights in another." *Giesbrecht v. Smith*, 397 So. 2d 73, 77 (Miss. 1981) (quoting 8 THOMPSON ON REAL PROPERTY § 4312 (1963)). Because "actual knowledge of the trustee is not relevant [under § 544(a)] . . . [t]he issue is therefore whether a hypothetical purchaser would be charged with implied knowledge of the [Debtor's purported conveyance to Dynasty of the Kemper County Property], by constructive or inquiry notice." *In re Hamilton*, 125 F.3d at 299; *see In re Sandy Ridge Oil Co. v. Centerre Bank Nat'l Ass'n (In re Sandy Ridge Oil Co.)*, 807 F.2d 1332, 1335 (7th Cir. 1986) ("[A]ctual knowledge . . . will never prohibit a trustee from invoking § 544(a)(3).").

Turning to constructive notice, "the primary purpose of recording is to impart *constructive* notice." *Henderson v. Bank of America, N.A. (In re Simmons)*, 510 B.R. 76, 96 (Bankr. S.D. Miss. 2014) (quotation and citation omitted). Here, the Bankruptcy Case was commenced on November 6, 2014. (Bankr. Dkt. 1). On January 21, 2015, the Court converted the Bankruptcy Case to chapter 7 and appointed the Trustee. (PTO at 7). At this juncture, the Debtor still held title to the Kemper County Property, according to the land records, because the Quitclaim Deed was not yet

recorded.[14]  (PTO at 7).  Consequently, even if the Quitclaim Deed was somehow valid, Dynasty's interest in the Kemper County Property would be superior as to the Debtor, the purported grantor, but not as to a bona fide purchaser.  Thus, the Trustee, as a hypothetical bona fide purchaser, did not have constructive notice of the Quitclaim Deed.

An individual is charged with inquiry notice when he "has actual notice or knowledge of facts that would lead a reasonably prudent person to question the sufficiency of title to property." *In re Simmons*, 510 B.R. at 96.  Such an individual "is charged with notice of all those facts which could or would be disclosed by a diligent and careful investigation."  *Burkett v. Peoples Bank of Biloxi*, 83 So. 2d 185, 188 (Miss. 1955), *remanded to* 83 So. 2d 763 (Miss. 1955).  At Trial, Dynasty argued that the Trustee had knowledge of sufficient facts to place him upon inquiry notice to check the title to the Kemper County Property.[15]  For example, Dynasty asserted that the Debtor disclosed the Kemper County Property on its schedules when it filed a chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the Northern District of Alabama in 2014 (the "Alabama Bankruptcy Case").[16]  In the Bankruptcy Case, however, the Debtor did not claim an interest in the Kemper County Property on its schedules. Dynasty argued that this disparity in the schedules led the Trustee to seek a title opinion and, thus, placed him on inquiry notice that the Debtor did not own the Kemper County Property.[17]  Because the Trustee was on notice, Dynasty concluded

---

[14]  At Trial, Dynasty conceded that the Trustee did not have "public notice" of the Debtor's purported conveyance of the Kemper County Property to Dynasty.  10:17:00 – 10:17:05.

[15]  10:17:05 – 10:17:20.

[16]  10:43:24 – 10:50:42; *see* Schedule A – Real Property (Dkt. 31), *In re Heritage Real Estate Investment, Inc.*, No. 14-70349-BGC11 (Bankr. N.D. Ala. Mar. 19, 2014).  The Alabama Bankruptcy Case was dismissed on October 20, 2014.  (*Id.* Dkt. 65).

[17]  10:51:36 – 10:51:57.

that the Trustee was not a bona fide purchaser under § 544(a)(3).[18]   On redirect, the Trustee testified that he has worked on many cases where debtors failed to disclose properties they owned on their bankruptcy schedules.[19]   In these situations, the Trustee discovered the mistake, took possession of the undisclosed property, and sold it, using the proceeds to pay creditors.[20]

Because § 544(a) concerns a hypothetical bona fide purchaser, information a trustee learns or should have learned while carrying out his postpetition duties concerning any purported conveyances is irrelevant.  The legal question asks what a bona fide purchaser, if he or she existed, would have learned in a diligent and careful investigation of the Kemper County Property.  The Kemper County Property consists of eighty (80) acres of undeveloped farmland.[21]  Without actual knowledge of a subsequent conveyance or a recorded deed evidencing such a conveyance, a prospective purchaser would be unable to learn that anyone other than the record title holder, the Debtor, owned the Kemper County Property.  Since the Quitclaim Deed was not recorded at the commencement of the Bankruptcy Case to create constructive notice and a prospective purchaser would not be charged with inquiry notice, the Court finds that the Trustee is entitled to avoid the Quitclaim Deed as a hypothetical bona fide purchaser for value without notice of the unrecorded Quitclaim Deed under § 544(a)(3).

---

[18]   12:03:18 – 12:04:03.

[19]   Test. of Trustee at 10:52:08 – 10:52:20.

[20]   Test. of Trustee at 10:52:21 – 10:52:40.

[21]   Test. of Wilson at 11:23:20 – 11:23:28.

**C. What is the effect of the postpetition recording of the Quitclaim Deed?**

When a debtor files a petition for bankruptcy relief, § 362 automatically imposes a statutory stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Property of the estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). Because the Debtor held record title to the Kemper County Property at the commencement of the Bankruptcy Case, the Kemper County Property is property of the estate.[22] The Trustee seeks cancellation of the Quitclaim Deed on the ground that Dynasty's postpetition recording was a violation of the automatic stay imposed by § 362(a).

Violations of the automatic stay are "voidable rather than void" and "capable of discretionary cure." *Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989). Importantly, "it can be said that 'void' and 'voidable' deal with a transaction or occurrence that was invalid or had no legal effect when it occurred, but might be made valid by a subsequent judicial act or ratification." *Elbar Invs., Inc. v. Pierce (In re Pierce)*, 272 B.R. 198, 207 (Bankr. S.D. Tex. 2001). Under § 362(d), a court may, in certain situations, grant a party relief from the automatic stay by "terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. § 362(d). In other

---

[22] While the Quitclaim Deed is dated April 24, 2008, and the Debtor did not disclose the Kemper County Property on its schedules in the Bankruptcy Case, the Debtor disclosed the Kemper County Property on Schedule A in the Alabama Bankruptcy Case. *See* Schedule A – Real Property (Dkt. 31), *In re Heritage Real Estate Investment, Inc.*, No. 14-70349-BGC11 (Bankr. N.D. Ala. Mar. 19, 2014). At Trial, Wilson testified that the individual who prepared the Debtor's schedules made a mistake because the Debtor sold the Kemper County Property to Dynasty in 2008. 11:24:25 – 11:25:45. Upon further cross-examination by the Trustee, Wilson admitted that she answered questions about the Kemper County Property at the § 341 meeting of the creditors in the Alabama Bankruptcy Case, stating, "It is in operation. There are cows out there on that land. It's farmland." 11:23:20 – 11:23:28. Thus, it seems that neither the Debtor nor Dynasty gave any weight to the Quitclaim Deed. Both legal title and physical possession of the Kemper County Property appear to have remained with the Debtor at all times before Dynasty's postpetition recording of the Quitclaim Deed.

words, if a party seeks such relief, "the bankruptcy court has the power to annul the automatic stay." *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990). "If the stay is annulled, the effect of the stay is voided and the act (otherwise in violation of the stay) is retroactively validated." *In re Pierce*, 272 B.R. at 210. In the Bankruptcy Case, Dynasty did not ask for any relief from the automatic stay to record the Quitclaim Deed and, as a result, no relief was granted.

When an individual records a deed postpetition, he is doing so in violation of the automatic stay. *See Sapp v. Wilson (In re Sapp)*, 91 B.R. 520, 522 (Bankr. E.D. Mo. 1988) ("[T]he Defendants' post-petition recordation of the warranty deed was in violation of the automatic stay and was an improper transfer of estate assets."). Thus, the Court finds that Dynasty's postpetition recording of the Quitclaim Deed was improper and is, therefore, void.[23]

## Conclusion

For the above and foregoing reasons, the Court concludes that the Quitclaim Deed is invalid on its face and void as a matter of Mississippi law because the Debtor, as grantor, did not sign the deed purporting to transfer to Dynasty its interest in the Kemper County Property. The Court further finds that the Trustee is entitled to avoid the Quitclaim Deed as a hypothetical bona fide purchaser for value without notice of the unrecorded Quitclaim Deed under § 544(a)(3). Lastly, Dynasty's postpetition recording of the Quitclaim Deed violated the automatic stay and is void. A

---

[23] While the Trustee also has asked the Court that he be allowed to avoid the Quitclaim Deed as a postpetition transfer under § 549, the Court does not need to address this remaining issue since the Quitclaim Deed is invalid on its face and void as a matter of Mississippi law. Because the Debtor, as the purported grantor, never signed the Quitclaim Deed, no transfer of land took place. Further, even if the Quitclaim Deed was somehow valid, this Court has found that the Trustee, as a hypothetical bona fide purchaser, is entitled to avoid the Quitclaim Deed pursuant to § 544(a)(3).

separate final judgment shall be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##